UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| VALENTIN FLORES SANCHEZ, <br><br> Plaintiff, <br><br> vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. 1:24-CV-01893-PAG <br><br> JUDGE PATRICIA A. GAUGHAN <br><br> MAGISTRATE JUDGE DARRELL A. CLAY <br><br> REPORT AND RECOMMENDATION |

### INTRODUCTION

Plaintiff Valentin Flores Sanchez challenges the Commissioner of Social Security's decision denying supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter was referred to me under Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry dated Sept. 9, 2024). For the reasons below, I recommend the District Court **AFFIRM** the Commissioner's decision.

### PROCEDURAL BACKGROUND

Mr. Sanchez applied for SSI on July 1, 2021, alleging he became disabled on April 1, 2018 due to heart disease, high blood pressure, hepatitis C, chronic obstructive pulmonary disease (COPD), carpal tunnel syndrome, depression, anxiety, sleep issues, and knee and ankle pain. (Tr. 75). The claim was denied initially on October 20, 2021 and on reconsideration on August 12, 2022. (Tr. 101, 111). On January 26, 2023, Mr. Sanchez requested a hearing before an ALJ. (Tr. 118). On October 12, 2023, Mr. Sanchez (represented by counsel) and a vocational expert

1

testified before the ALJ. (Tr. 42-65). On November 9, 2023, the ALJ determined Mr. Sanchez was not disabled. (Tr. 17-32). On September 10, 2024, the Appeals Council denied Mr. Sanchez's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-3; *see also* 20 C.F.R. § 404.984(b)(2)). Mr. Sanchez timely filed this action on October 30, 2024. (ECF #1).

FACTUAL BACKGROUND

I. **Personal and Vocational Evidence**

Mr. Sanchez was 44 years old on his alleged onset date and 50 years old at the hearing. (*See* Tr. 75). He holds a GED (Tr. 42) and has past work experience as a production machine tender and as a composite of landscape supervisor and landscape laborer (Tr. 60-61).

II. **Relevant Medical Evidence**[1]

In June 2018, Mr. Sanchez was hospitalized for two months for a blood stream infection and osteomyelitis. (Tr. 437, 453, 460; *see also* Tr. 47). The imaging of his cervical, thoracic, and lumbar spine showed mild spinal canal stenosis at C5-C6 vertebrae secondary to a small circumferential disc bulge, and lumbar degenerative disc disease, most pronounced at L5-S1 vertebrae, with a bulging disc abutting the S1 vertebra nerve roots and moderately narrowing the neural foramina. (Tr. 749-51). Later imaging showed osteomyelitis at the L5-S1 vertebrae. (Tr. 460).

In May 2020, Mr. Sanchez sought emergency treatment for right-knee pain and swelling while doing pullups. (Tr. 370, 859). Physical examinations revealed full extension of the leg,

---

[1] Mr. Sanchez challenges the ALJ's evaluation of his subjective statements about his back, knee, and neck pain. (*See* ECF #9 at PageID 1020-24; ECF #12 at PageID 1040). Thus, I confine my discussion of evidence to those conditions only.

flexion of the knee limited to approximately 60 degrees, mild to moderate effusion in the right knee, and that Mr. Sanchez walked with a mild limp. (Tr. 372, 862). X-ray imaging of Mr. Sanchez's right knee found no fracture, maintained joint spaces, and moderate joint effusion. (Tr. 372, 862). Mr. Sanchez's knee was splinted. (Tr. 371, 862).

In July 2021, Mr. Sanchez established care with a primary care provider. (Tr. 888). An examination showed a normal range of motion and was negative for back pain, myalgias, and neck pain. (Tr. 890-91). Mr. Sanchez complained of right hand and wrist pains. (Tr. 897). His provider suspected carpal tunnel syndrome. (*Id.*). Mr. Sanchez also started on pain relievers for his knee pain. (*Id.*).

Mr. Sanchez next returned to his primary care provider in May 2022, complaining of pain in his right wrist that kept him from working. (*See* Tr. 935-36). He also complained of knee pain and reported his knees buckle and he feels short of breath while climbing stairs (Tr. 936). The provider renewed a prescription for topical pain relievers for Mr. Sanchez's knee pain. (Tr. 939).

Mr. Sanchez's most recent medical examination was in December 2022. (*See* Tr. 963). There, he did not complain of back pain and his physical examination showed a normal range of motion. (Tr. 965-66).

### III. Relevant Opinion Evidence

On August 24, 2021, state agency medical consultant Maureen Gallagher, D.O., evaluated Mr. Sanchez as part of the initial evaluation of his disability application. (Tr. 80-81). Dr. Gallagher opined Mr. Sanchez is limited to medium work; can lift and carry 50 pounds occasionally and 25 pounds frequently; can stand and sit for six hours of an eight-hour workday; can frequently climb ramps and stairs; can occasionally climb ladders, ropes, or scaffolds; can frequently stoop; and is unlimited in balancing, kneeling, crouching, crawling, reaching, and pushing or pulling. (*Id.*). Dr.

3

Gallagher opined Mr. Sanchez has no manipulative, visual, communicative, or environmental limitations. (Tr. 81). On June 28, 2022, state agency medical consultant Gary Hinzman, M.D., affirmed the findings on reconsideration. (Tr. 91-92).

IV.     **Relevant Testimonial Evidence**

Mr. Sanchez described neck pain and "a lot" of lower back pain. (Tr. 47-48). He also described residual pain from a broken left ankle. (Tr. 48). His right knee swells and he can stand for about 10 minutes before needing to sit and can walk about a half a block. (Tr. 48-49).

When working in landscaping, Mr. Sanchez estimated lifting 30 to 50 pounds at a time, though he is now unsure if he could lift 20 pounds. (Tr. 46, 50). His primary responsibilities were backhoe driving and tree trimming (Tr. 51), which his carpal-tunnel related wrist pain and numbness prevent him from doing (Tr. 46, 51). He cannot squeeze or strain his dominant right hand without pain. (Tr. 52, 58). He cannot use his right hand to open or squeeze jars or bottles, but he can use it to button clothes. (Tr. 50-51, 58-59). He also cannot bend down without pain, making it hard to tie shoes. (Tr. 52). He wears a wrist brace for his carpal tunnel and while his doctor recommended surgery, he fears the procedure. (*See* Tr. 51). He has struggled to get regular medical treatment because of insurance and identity-theft issues. (Tr. 58).

His back and knee pain, combined with his COPD, makes it difficult to climb stairs. (Tr. 50). He described his knee swelling when climbing stairs and having to pull himself up. (Tr. 49). He sleeps in the living room to avoid the stairs to his bedroom. (Tr. 50, 58).

STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months."

20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine whether a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?
2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?
3. Does the severe impairment meet one of the listed impairments?
4. What is claimant's residual functional capacity and can claimant perform past relevant work?
5. Can claimant do any other work considering his or her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity (RFC) to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine whether the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is the claimant deemed disabled. 20 C.F.R. §§ 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

### THE ALJ'S DECISION

At Step One, the ALJ determined Mr. Sanchez had not engaged in substantial gainful activity since July 1, 2021. (Tr. 19). At Step Two, the ALJ named the following severe impairments:

> Generalized anxiety disorder, panic disorder, depressive disorder, marijuana use disorder, COPD, lumbar spine degenerative disc disease, cervical stenosis, and right knee degenerative joint disease.

5

(*Id.*). At Step Three, the ALJ found Mr. Sanchez's impairments did not meet the requirements of, or were medically equivalent to, a listed impairment. (Tr. 20-23).

At Step Four, the ALJ determined Mr. Sanchez's RFC as follows:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 416.967(c) except [he may only] frequently climb ramps and stairs and stoop; occasionally climb ladders, ropes, and scaffolds; and frequently be exposed to extreme cold, extreme heat, humidity as well as dust, odor, fumes, and pulmonary irritants. The claimant can perform work tasks that do not require a specific production rate, such as assembly line work or work that requires hourly quotas; occasionally and superficially interact with supervisors, coworkers, and the public; and has the ability to carry out, concentrate, persist, and maintain pace for completing simple, routine, repetitive tasks. "Superficial" is defined as work that does not involve arbitration, negotiation, confrontation, being responsible for safety of others, or directing work of others.

(Tr. 23). The ALJ then found Mr. Sanchez could not perform his past relevant work as a production machine tender or as a composite of landscape laborer and landscape supervisor. (Tr. 30). At Step Five, the ALJ found Mr. Sanchez could perform other work in the national economy such as cleaner II, hospital cleaner, or store laborer. (*See* Tr. 31-32). Thus, the ALJ concluded Mr. Sanchez was not disabled. (Tr. 32).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial

6

evidence" is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). But "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Apart from considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.").

## DISCUSSION

Mr. Sanchez argues the ALJ erred in evaluating his subjective statements about his back, knee, and neck pain by not explaining how or why his statements were inconsistent with the other evidence in the record. (*See* ECF #9 at PageID 1020-24; ECF #12 at PageID 1040). The Commissioner responds that no objective medical evidence substantiated Mr. Sanchez's complaints of disabling pain and that the opinion evidence assessed he could do medium work despite his condition. (ECF #11 at PageID 1034-35).

In evaluating the claimant's subjective reports of symptoms, SSR 16-3p requires the ALJ consider the claimant's complaints along with the objective medical evidence, treatment received, daily activities, and other evidence. 2017 WL 5180304, at *5-8 (Oct. 25, 2017). The ALJ also uses the factors outlined in 20 C.F.R. § 416.929(c)(3) to evaluate the claimant's statements:

1. A claimant's daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief from pain or other symptoms;
6. Any measures other than treatment an individual uses or used to relieve pain or other symptoms; and

8

> 7. Any other factor concerning an individual's functional limitations and restrictions due to pain and other symptoms.

The ALJ need not analyze all seven factors, only those germane to the alleged symptoms. *See Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 733 (N.D. Ohio 2005). An ALJ need not accept a claimant's subjective complaints when they are inconsistent with the evidence. SSR 16-3p, 2017 WL 5180304, at *8. Nor must the ALJ "make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts." *Kornecky v. Comm'r of Soc. Sec.*, 167 F.App'x 496, 508 (6th Cir. 2006).

> The ALJ analyzed Mr. Sanchez's subjective statements of his symptoms as follows:
>
> The claimant's allegations of disabling functional limitations are not entirely consistent with the evidence of record. The claimant's impairments could reasonably be expected to produce the alleged symptoms, but the intensity of the symptoms and impact on functioning are not consistent with the totality of the evidence.
>
> As such, the medical record does not establish functional limitations that would preclude the restrictions stated above. Despite allegations of limitations, examinations and tests showed stability and symptoms controlled with treatment. The claimant maintained intact system functioning as demonstrated during examinations that showed generally regular heart rate and rhythm, clear lungs, full extremity strength and range of motion, and normal sensation, reflexes, coordination, and gait with no assistive device. He also showed the ability to interact with cooperative behavior, full orientation, and ability to provide information, answer questions, and understand instructions and treatment plans.
>
> The undersigned is cognizant that the degree of limitation that an individual might experience from impairments might not necessarily be reflected in a particular treatment note; however, in the instant matter, the longitudinal record does not reflect a significant degree of functional limitation from the claimant's impairments. Treatment notes and examination findings do not support loss of functioning that would support a disabling degree of physical or mental limitation. Thus, the medical evidence does not support a greater degree of limitation than that which is set forth in the above residual functional capacity assessment.
>
> In sum, the claimant's alleged functional limitations are not entirely consistent with the claimant's reported daily functioning, the examination findings of record, and the persuasive portions of the medical opinions. Nonetheless, the above evidence supports that the claimant has experienced the degree of limitation reflected in the

> residual functional capacity assessment above and discussed above. These limitations account for any deficits in functioning or symptoms from combined physical and mental conditions.
>
> Accordingly, the undersigned finds the record does not establish limitations that would preclude work activity within the residual functional capacity defined in this decision.

(Tr. 27-28).

The ALJ's analysis points to three categories of evidence contradicting Mr. Sanchez's complaints of disabling pain: the medical record, the opinion evidence, and Mr. Sanchez's daily activities. The ALJ's discussion of the medical record and the medical opinions reference other portions of the decision. Reading the ALJ's discussions in those areas, the ALJ provides examples contradicting Mr. Sanchez's complaints of disabling pain. At the same time, the ALJ's discussion of Mr. Sanchez's daily activities does not clearly contradict his complaints. Any error is harmless because the ALJ's discussion of the medical evidence and the opinion evidence provide substantial evidence for the ALJ's conclusion that Mr. Sanchez is not disabled.

**I.    The ALJ explained the medical record did not support Mr. Sanchez's complaints of disabling pain.**

SSR 16-3p requires an ALJ "examine the entire case record, including the objective medical evidence" when evaluating the claimant's complaints. 2017 WL 5180304, at *5. An ALJ may not "reject [an individual's] statements about the intensity and persistence of [his or her] pain . . . *solely* because the available objective medical evidence does not substantiate [those] statements." 20 C.F.R. § 416.929(c)(2) (emphasis added). Instead, any lack of evidence is "one factor that may be considered." *Garcia v. Comm'r of Soc. Sec.*, No. 1:16-cv-2682, 2018 WL 838371, at *14 (N.D. Ohio Feb. 12, 2018) (citing *Kirkland v. Comm'r of Soc. Sec.*, 528 F.App'x 425, 427 (6th Cir. 2013)).

10

Here, the ALJ began analyzing Mr. Sanchez's complaints by noting "the medical record does not establish functional limitations that would preclude the restrictions" in the RFC. (Tr. 27). In other words, the ALJ concluded the medical record indicated Mr. Sanchez could perform medium exertional work with appropriate postural, environmental, and work-pace limitations. (*See* Tr. 23). The ALJ then explained "despite the allegations of limitations, examinations and tests showed stability and symptoms controlled with treatment." (Tr. 27). The ALJ then cited the normal findings from Mr. Sanchez's physical examinations:

> The claimant maintained intact system functioning as demonstrated during examinations that showed generally regular heart rate and rhythm, clear lungs, full extremity strength and range of motion, and normal sensation, reflexes, coordination, and gait with no assistive device. He also showed the ability to interact with cooperative behavior, full orientation, and ability to provide information, answer questions, and understand instructions and treatment plans.

(Tr. 27-28). The few treatment notes in the record bear out these characterizations. (Tr. 890-91, 904, 937-38, 965-67). The ALJ qualified the explanation that it was not one particular treatment note but the ALJ's impression of "the longitudinal record does not reflect a significant degree of functional limitation." (Tr. 28).

Additionally, the ALJ mentioned Mr. Sanchez's symptoms "were controlled with treatment." (Tr. 27). A claimant's medications and treatment regimen and their effectiveness are two other factors to consider in analyzing a claimant's statements. 20 C.F.R. § 416.929(c)(3)(iv)-(v). Although the ALJ did not discuss these notes in the allegation analysis proper, "there is no requirement that the ALJ incorporate all the information upon which he relied into a single tidy paragraph." *Evans v. Comm'r of Soc. Sec.*, No. 1:19-cv-2895, 2020 WL 6064112, at *13 (N.D. Ohio Oct. 14, 2020); *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("Because it is proper to

read the ALJ's decision as a whole . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses" in different parts of the decision.).

The ALJ's reference to treatment calls back to earlier in the decision where the ALJ discussed Mr. Sanchez's two treatment plans. In the July 2021 and May 2022 primary-care consultations, Mr. Sanchez complained of hand, wrist, and knee pain. (Tr. 888, 939). The ALJ noted the treatment plan for those complaints was "medication refills and outpatient visits" in 2021 (*see* Tr. 26) and "to take medications regularly, including psychotropic medication, future PFT, continue with inhaler, referral for physical therapy evaluation to address bilateral chronic knee pain, and routine primary care follow-up" in 2022 (*see* Tr. 26-27) (citing Tr. 939). The ALJ later characterized this treatment plan as "conservative." (*See* Tr. 29) ("these opinions are supported by evidence of a conservative course of treatment for impairments that consisted of medication, office visits, updated testing, and referral to physical therapy").

The Sixth Circuit has held a conservative treatment approach for a condition can suggest that condition is not disabling. *Branon v. Comm'r of Soc. Sec.*, 539 F.App'x 675, 678 (6th Cir. 2013) (finding that claimant's "conservative treatment approach suggests the absence of a disabling condition."). Mr. Sanchez's treatment of medication and office visits is consistent with other characterizations of conservative treatment. *See, e.g.*, *Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *3 (6th Cir. Sept. 28, 2023) (characterizing "epidural injections, medial-branch blocks, and prescription pain medication" as "conservative treatment"). The ALJ's findings that Mr. Sanchez's conditions were controlled by a conservative treatment plan of medication and office visits contradicted Mr. Sanchez's complaints of disabling pain.

The ALJ explained that Mr. Sanchez's complaints of disabling neck pain and "a lot" of lower back pain (*see* Tr. 47-48) were inconsistent with the medical record. Although the ALJ's explanation required piecing together references to other portions of the decision, the decision read as a whole provides substantial evidence that Mr. Sanchez's complaints were unsupported by the medical record that documents steady symptoms controlled by a conservative treatment plan consisting primarily of medication and office visits. Therefore, I conclude remand is not warranted on this basis.

**II.     The ALJ explained the medical opinions contradicted Mr. Sanchez's complaints of disabling pain.**

Second, the ALJ explained that Mr. Sanchez's "alleged functional limitations are not entirely consistent with . . . the persuasive portions of the medical opinions." (Tr. 28). Though not an explicit factor in SSR 16-3p, an ALJ may evaluate a claimant's complaints based on the available medical opinions. *Kirkland v. Comm'r of Soc. Sec.*, 528 F.App'x 425, 427 (6th Cir. 2013) (applying parallel provision for disability insurance benefits). "[M]edical opinions, plus the lack of objective medical evidence, provide substantial evidence for the ALJ's credibility finding." *Id.*

The ALJ explained that Mr. Sanchez's "alleged functional limitations are not entirely consistent with . . . the persuasive portions of the medical opinions." (Tr. 28). Although the ALJ did not further discuss the medical opinions in the allegation analysis, the reference to "the persuasive portions of the medical opinions" refers the reader to the ALJ's analysis of the opinions on the next page. As mentioned above, this writing structure is not error on its own. *See Evans*, 2020 WL 6064112, at *13 (rejecting any requirement of "a single tidy paragraph").

The ALJ analyzed the medical opinions and found them persuasive to the extent the ALJ found Mr. Sanchez limited to the medium exertion level. (Tr. 28). This finding directly contradicts

13

Mr. Sanchez's subjective statements about what he can do with his symptoms. Mr. Sanchez's stated estimate that while he could previously lift 30 to 50 pounds at a time (Tr. 46), he is now unsure whether he could lift 20 pounds (Tr. 50). The state agency medical consultants opined Mr. Sanchez could do medium work (Tr. 80-81, 91-92) and the ALJ found those opinions persuasive. As defined in the regulations, "medium" exertion "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). In making this finding, the ALJ implicitly determined Mr. Sanchez's statement that he is unsure he could lift 20 pounds was inconsistent with the opinion evidence.

Additionally, the ALJ impliedly found Mr. Sanchez's estimate to be inconsistent with other evidence. The ALJ explained the medical opinions (and the medium exertion level) were consistent with "imaging and testing," normal examination findings, and "a conservative course of treatment for impairments that consisted of medication, office visits, updated testing, and referral to physical therapy." (Tr. 28). By finding Mr. Sanchez's estimate inconsistent with the medical opinions, the ALJ implicitly found the estimate inconsistent with the evidence that supported those opinions.

When the decision is read as a whole, the ALJ incorporated this discussion into the allegation analysis by finding Mr. Sanchez's allegations inconsistent with the persuasive portions of the opinions. While it may be preferable for these findings to be discussed in the allegation analysis, the ALJ's explanation can be followed. The ALJ thus properly relied on the medical opinions to evaluate Mr. Sanchez's complaints. Together with the lack of objective medical evidence discussed above, the ALJ's explanation provides substantial evidence for concluding Mr.

Sanchez's complaints were not consistent with the evidence. *See Kirkland*, 528 F.App'x at 427. Therefore, remand is not warranted on this basis.

**III.    The ALJ's failure to explain how Mr. Sanchez's activities of daily living were inconsistent with his complaints is harmless because the ALJ's other findings were proper and provide substantial evidence for the ALJ's credibility analysis.**

Third, the ALJ noted Mr. Sanchez's "alleged functional limitations are not entirely consistent with [his] reported daily functioning." (Tr. 28). A claimant's daily activities is one factor used to evaluate the claimant's statements about complained-of symptoms. *See* 20 C.F.R. § 416.929(c)(3)(i). Like the analysis of the medical record, the ALJ mentioned Mr. Sanchez's daily activities in one sentence without explanation but did discuss it previously in the decision. That said, even after reading the decision as a whole, the ALJ's analysis is unclear.

When examining Mr. Sanchez's complaints, the ALJ wrote: "In sum, the claimant's alleged functional limitations are not entirely consistent with the claimant's reported daily functioning . . . ." (Tr. 28). Previously in the decision, the ALJ analyzed Mr. Sanchez's daily activities:

> The claimant reported his conditions affect daily activities, for example, takes 10 minutes to take out the garbage and one or two hours to cut the grass because he becomes out of breath and hands hurt . . . [he] can stand 10 minutes, walk half a block, sit 15 minutes . . . is unable to open jars with his right hand, and has difficulty with using buttons and zippers . . . seldom goes to the supermarket, and [his] conditions affect performance of household chores.

(Tr. 24) (citations omitted).

Even reading these two passages together, it is unclear how the ALJ concluded Mr. Sanchez's allegations of disabling pain are inconsistent with his reported daily activities. For instance, removing garbage and mowing the grass are tasks that can be done despite pain, particularly with breaks. But there is no information about how much grass Mr. Sanchez mows or

how much garbage he takes out or how far it goes. A reasonable reader could thus not infer the pace at which Mr. Sanchez moves or how many breaks he takes. This factors into the ALJ's analysis because the VE testified it would be work preclusive to be "off-task 15% or more of a workday, excluding regular breaks and lunches," meaning "no more than eight minutes per hour." (Tr. 63). Thus, the ALJ's analysis that Mr. Sanchez can take out garbage in 10 minutes or mow grass in one or two hours could be consistent with a medium exertion if he takes no breaks or consistent with disabling pain if he takes many breaks.

Despite this gap, the ALJ's lack of explanation in this one factor does not warrant reversal. An ALJ's error in making a factual finding when analyzing the credibility of a claimant's subjective statements is subject to harmless-error review. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). When an ALJ errs in analyzing a claimant's subjective statements, that error is harmless "[s]o long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion . . . ." *Id.* (quotation omitted).

Although the ALJ's analysis does not explain how Mr. Sanchez's daily activities are inconsistent with his subjective statements, the ALJ's other findings about the medical evidence and opinions are "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007); *Kirkland*, 528 F.App'x at 427 ("Medical opinions, plus the lack of objective medical evidence, provide substantial evidence for the ALJ's credibility finding."). Because substantial evidence supports the ALJ's other findings,

16

remand is not warranted based solely on the ALJ's erroneous analysis of Mr. Sanchez's daily activities. *Ulman*, 693 F.3d at 714.

CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **AFFIRM** the Commissioner's decision denying supplemental security income.

Dated: July 15, 2025

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

OBJECTIONS, REVIEW, AND APPEAL

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R. Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation.** *Berkshire v. Dahl,* **928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object."** *Howard v. Sec'y of Health and Hum. Servs.,* **932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'"** *Overholt v. Green,* **No. 1:17-cv-186, 2018 WL 3018175, at \*2 (W.D. Ky. June 15, 2018) (quoting** *Howard,* **932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice.** *See United States v. Wandahsega,* **924 F.3d 868, 878-79 (6th Cir. 2019).**